742 F.Supp. 450 (1990)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, RAILROAD RETIREMENT BOARD COUNCIL, AFL-CIO, Jacqueline Brook, Jane Ellis, Julia Pelt, and Robert Piech, Plaintiffs,
v.
UNITED STATES RAILROAD RETIREMENT BOARD and The United States Office of Personnel Management, Defendants.
No. 89 C 7369.
United States District Court, N.D. Illinois, E.D.
June 28, 1990.
*451 Kevin M. Grile, Stephen Feinberg, Asher, Gittler and Greenfield, Ltd., American Federation of Government Employees, AFL-CIO, Chicago, Ill., for plaintiffs.
Ira H. Raphaelson, U.S. Atty., Michele M. Fox, Asst. U.S. Atty., U.D. Dept. of Justice, Chicago, Ill., for defendants.

MEMORANDUM OPINION
BRIAN BARNETT DUFF, District Judge.
Plaintiffs are government employees and groups representing government employees who do not want to fill out a government questionnaire (known as SF86). The government, specifically the United States Railroad Retirement Board (the Board) wants to make completion of the questionnaire a condition of employment. Plaintiffs are seeking a preliminary injunction to prevent the Board from requiring them to respond to at least some of the questions on SF86.
Plaintiffs raise several objections to the questionnaire. They claim that a question asking them to disclose their membership in any non-political or non-religious organizations violates their First Amendment right of association, that the statement on the form that "[w]e may ... give some of the information to Federal State and local agencies checking on law violations or for other lawful purposes" violates plaintiffs' Fifth Amendment privilege against self-incrimination, and that several of the questions, including those seeking information about plaintiffs' finances, and use of drugs and alcohol, violate plaintiffs' constitutional right to privacy. Finally, plaintiffs maintain that the Board's requirement that they complete SF86 is a violation of the Privacy Act, 5 U.S.C. § 552a. The parties have filed cross motions for summary judgment. This court will address each of their arguments in turn.

I. Organizational Affiliations

Question 13, of SF86, asks the employee to:

*452 a. List all U.S.-based organizations, except labor unions, political or religious organizations you belonged to in the last 15 years.
b. List any foreign-based political or business organizations of which you have been a member, official, employee, or active participant at any time.
Plaintiffs argue that both parts of question 13 infringe their First Amendment right of association. Plaintiffs fear that should they indicate membership in some organization of which the Board disapproves, they will be disqualified from consideration for jobs with the Board. The Board, on the other hand, maintains that it is seeking the information not to disqualify particular applicants, but simply as another source of information about the applicant's character and fitness for a position with the Board.
In general, the First Amendment has been construed to prohibit public employers from inhibiting employees' interest in free expression where, on balance, the employees' interest exceeds whatever legitimate interest of the public employer which is served by the challenged practice. See Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Rutan v. Republican Party of Illinois, 868 F.2d 943, 948 (7th Cir.1989) (aff'd in pertinent part, ___ U.S. ___, 110 S.Ct. 2729, 111 L.Ed.2d 52 (June 21, 1990). On the other hand, a public employer's work rules which are legitimately related to the effective functioning of the workplace, and are "not aimed at particular parties, groups, or points of view" are permissible under the First Amendment. See Civil Service Commission v. Nat'l Assoc. of Letter Carriers, 413 U.S. 548, 564, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973); Rutan, 868 F.2d at 948; Bart v. Telford, 677 F.2d 622, 624-25 (7th Cir.1982).
The Constitution, particularly the First Amendment, protects "freedom of association". That means that an individual's right to choose "to enter into and maintain certain intimate human relationships" (a "fundamental element of personal liberty"), as well as the "right to associate for the purpose of engaging in those activities protected by the First Amendment  speech, assembly, petition for the redress of grievances, and the exercise of religion" are protected. Roberts v. United States Jaycees, 468 U.S. 609, 617-618, 104 S.Ct. 3244, 3249-3250, 82 L.Ed.2d 462 (1984).
More specifically, the Court has held that to compel the disclosure of group memberships can "seriously infringe on privacy of association and belief guaranteed by the First Amendment." Buckley v. Valeo, 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976). Therefore, it is justified only when the interests of the state survive close scrutiny and there is "a `relevant correlation' or `substantial relation' between the governmental interest and the information required to be disclosed." Id. (Footnotes omitted). Neither the parties nor this court has found any cases reported in this circuit which presents facts similar to those presented in this case. The Third Circuit, however, applying the principles enunciated above, has considered a nearly identical question.
In Fraternal Order of Police, Lodge 5 v. Philadelphia, 812 F.2d 105 (3d Cir.1987), the Third Circuit held that the city of Philadelphia was not entitled to ask police officers applying for positions on a special police force to "[l]ist all [offices and directorships] in any entity or association whether for profit or not for profit, held by you, your spouse, or your minor dependent children...." Id. at 118-119. The city attempted to justify the question by arguing, as does the Board here, that the purpose of the question was, among other things, "to provide a positive source of information concerning the extent of an applicant's community, civic and fraternal involvement." Id. The court rejected that argument, stating that "if the question is really intended to `provide a positive source' to support the application ... it can be made optional." Id. at 119.
This court finds that reasoning persuasive. The Board's question is, admittedly, more limited than that in the Third Circuit case; the Board specifically excludes from the question memberships in *453 labor unions, religious or political organizations. John Lafferty, an Office of Personnel Management (OPM) director, is the person responsible for issuing the SF86. He stated in his affidavit that the information sought through question 13 "is sought as the basis for an investigation into the individual's suitability, including any possible involvement in civic or community organizations, which might reflect favorably on the individual's moral character." He also states that "the term `political organizations' as used in this question is considered by OPM to include political advocacy groups...."
Mr. Lafferty's explanations are simply not enough to put question 13 into compliance with the First Amendment. If the Board intends to use the question only to gather positive information about the applicant, then it can make the question optional. Furthermore, the fact that OPM no longer interprets the question to inquire into an applicant's membership in political advocacy groups, such as the National Rifle Association or Planned Parenthood, does nothing to inform the people completing the questionnaire that such groups are not part of the inquiry. In any case, the Board has not demonstrated to this court that its need for an additional source of information about an individual's "moral character" has a relevant, much less substantial, relation to its interest in finding whether a particular individual is suitable for a position working on the Board's computer system.
Because this court has determined that question 13 violates plaintiffs' First Amendment rights, it need not consider whether the question would also violate plaintiffs' privacy rights, or whether it violates 5 U.S.C. § 552a(e)(7), which provides that an agency shall "maintain no record describing how any individual exercises rights guaranteed by the First Amendment. ..."

II. Substance Abuse

Question 24 of SF86 asks the employee:
a. Do you now use, or within the last 5 years have you used, alcoholic beverages habitually to excess? (yes or no)
b. Do you now use or supply, or within the last 5 years have you used or supplied, marijuana, cocaine, narcotics, hallucinogenic, or other dangerous or illegal drugs? (yes or no)
c. If you answered "Yes" to question a or b above, provide ... information relating to the types of substance(s) used, the periods and frequency of use for each, and any other details or explanation relating to your use of these substances.

A. Right to Privacy

Plaintiffs argue that the entire question 24 violates their right to privacy. The Board claims that its interest in the information outweighs the plaintiffs' privacy interests. This court recognizes that "the right most valued by civilized men" is "the right to be let alone". Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J. dissenting). The Federal Constitution does protect the privacy rights of all citizens against infringement by the government. One such privacy right is the "individual interest in avoiding disclosure of personal matters", Whalen v. Roe, 429 U.S. 589, 598-600, 97 S.Ct. 869, 875-877, 51 L.Ed.2d 64 (1977). See also Pesce v. J. Sterling Morton High School Dist. 201, 830 F.2d 789, 795, (7th Cir.1987)[1], (and cases cited therein). The question here is the extent of this right. Does it protect the Board's employees from the requirement that they make the public confession required by the questions in issue?
This court recognizes that the federal government has broader powers in actions it takes with respect to its employees than it does in actions taken against non-employees. Connick v. Myers, 461 U.S. 138, 146-147, 103 S.Ct. 1684, 1689-1690, 75 L.Ed.2d *454 708 (1983). However, the fact that the government is acting as an employer does not give it unbridled license to require anything it wants of its employees, particularly where, as here, the disclosure which the government wants to require employees to make to the Board will also include disclosure to any other interested federal agency.
The Supreme Court has suggested that courts deciding the extent of an asserted privacy interest balance the individual's interest in keeping the information private with the public's interest in having access to the information. Nixon v. Administrator of General Services, 433 U.S. 425, 458, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977). The Seventh Circuit has recognized that "the federal right of confidentiality might in some circumstances be implicated when a state conditions continued employment on the disclosure of private information." Pesce, 830 F.2d at 797. However, that court has not yet, so far as this court can discern, been called upon to elaborate upon the particular circumstances which would implicate that right.
This court holds that the circumstances presented here do implicate "the federal right of confidentiality." Question 24 seeks highly personal information about an individual's current and or past drug or alcohol abuse. Such inquiry into the personal lives of individuals is not justified unless the Board demonstrates a strong interest in having the information. The Board argues that drug abuse (including alcohol abuse) may legitimately disqualify an applicant from consideration for a government position, pursuant to 5 CFR 731.202(b)(5) and (6); Executive Order 10450, 5 U.S.C. § 7532; and OPM's own suitability standards. The statutes and regulations cited, with the exception of the last one, justify an inquiry into an individual's history of substance abuse in the interests of "national security".
It is not at all clear to this court how a computer operator working for the Railroad Retirement Board could jeopardize national security. Nonetheless, the Board has submitted uncontradicted evidence that it would be possible for someone to abuse the position, causing some significant harm to the computer system and that the system was used in 1989 to pay nearly $7 million in benefits. Affidavit of John F. Malich, Personnel Security Officer for the Board, Defendant's Memorandum in Reply to Plaintiff's Cross-Motion for Summary Judgment, Ex. 9. Thus, damage to the system could have far-reaching deleterious effects and the Board has therefore demonstrated a need for at least a limited investigation of the people it selects to fill the computer operator positions.
The question for this court is which of the threatened harms is greater. The court must balance the Board's need for some information about an applicant with the applicant's interest in keeping private evidence of past substance abuse. This court first notes that plaintiffs are not disputing the Board's right to collect information about their educational background (question 10), employment history (questions 11 and 22), military record (question 21) or police record (question 23). In light of the Board's access to all that information, the forced self-disclosure of such highly personal information as substance abuse which may have occurred up to five years ago is excessive, particularly given the nature of the positions at issue. The Board has not advanced sufficient justifications for such an inquiry.
This court notes, and attaches no small significance to, the fact that the subject of this suit is the investigation of individuals who are applying for government jobs. No one is complaining about inquiries to previous employers, or verification of educational records, or even access to arrest records. The Board here wants applicants for computer operator positions to answer highly personal questions and then to authorize the Board to investigate further the information gleaned from those answers, and to release the information to "the duly accredited representative of any authorized agency. ..." Plaintiffs' Exhibits in Support of Cross-Motion for Summary Judgment, Ex. B, p. 10. The Board is asking this court to grant it broad latitude with highly private information, but it has not demonstrated *455 that it has taken the precautions which are necessary in a democratic society, which places an extremely high value on personal privacy, to protect that information.
It is true that "[i]n an organized society, there are few facts that are not at one time or another divulged to another." In fact, "`Hardly anyone in our society can keep altogether secret very many facts about himself. Almost every such fact, however personal or sensitive, is known to someone else. Meaningful discussion of privacy, therefore, requires the recognition that ordinarily we deal not with an interest in total nondisclosure but with an interest in selective disclosure.'" U.S. Dept. of Justice v. Reporters Committee, 489 U.S. 749, 109 S.Ct. 1468, 1476 and n. 14, 103 L.Ed.2d 774 (1989), citing Karst, "The Files": Legal Controls Over the Accuracy and Accessibility of Stored Personal Data, 31 Law & Contemp.Prob. 342, 343-44 (1966). Nonetheless, this court takes the interest in "selective disclosure" quite seriously. The Board would require its employees to divulge to it (and, through the release form, to any other interested federal agency) the most personal sorts of information. While not all the information sought actually implicates the Fifth Amendment, all of it implicates the type of interest which the Fifth Amendment protects. That is, the right to keep certain information from the government, particularly when the government has expressed an intent to use that information as a basis for taking some adverse action against the individual making the disclosure. The government cannot require its employees to divulge their most intimate secrets; at least not without demonstrating a compelling need for those secrets. No such compelling need has been demonstrated here, and this court accordingly will not authorize the Board to collect the information requested in question 24.

B. Fifth Amendment

Even if this court were to find that part (a) of question 24 is constitutional, there is nonetheless a serious constitutional concern about part (b). Plaintiffs legitimately fear that an affirmative answer to question 24b could be used against them in a criminal proceeding. Thus, they argue that the Board's requirement that they respond to that question violates their Fifth Amendment right against self-incrimination. Attached to SF86 is a form entitled "Authority For Release of Information". An applicant signing that form authorizes the agency "to release [information gleaned from the SF86 and any concomitant investigation] upon request of the duly accredited representative of any authorized agency regardless of any agreement I have made with you previously to the contrary. (Emphasis added).
The Board claims that the Fifth Amendment claim is moot, since OPM intends to use the information on the questionnaire only as a basis for an investigation into "the applicant's suitability for Federal employment and eligibility for any required security clearance." Memorandum in Support of Defendant's Motion for Summary Judgment at 5. OPM has also sent all Executive Branch personnel offices FPM Bulletin No. 736-19, which is intended to inform persons completing SF86 that "[t]he information you provide in response to question 24b on [SF86] is intended only as a basis for an investigation ... to determine your suitability for Federal employment and/or eligibility for any required security clearance. The information you provide on question 24b will not be provided for use in any criminal proceeding against you." (Emphasis in original). The notice to the personnel officers states that "[a]gencies should provide a copy of this notice to each individual who needs to complete an SF86." (Emphasis added).
The FPM bulletin is inadequate to protect the Fifth Amendment interests of persons required to complete an SF86. While the Board correctly argues that "[i]t is well settled that a court may dismiss a case as moot based on the defendant's cessation of the challenged activity" (Memorandum in Support of Defendant's Motion for Summary Judgment at 6), it is not at all clear to this court that the FPM bulletin has solved the problems alleged by the plaintiffs. The Board has made no showing that the information gathered through question 24b *456 would be sufficiently protected from release to law enforcement agencies. Nothing in the record indicates that Board employees with access to the SF86 are precluded from disclosing that information, and the Authority for Release of Information form specifically negates any other agreements made about the release of information. Accordingly, this court finds that the Board's requirement that its employees respond to question 24b as a condition of employment violates the Fifth Amendment.

III. Mental Health

Question 25 of SF86 asks the applicant to disclose the following:
Have you ever had a nervous breakdown or have you ever had medical treatment for a mental condition? If "Yes", provide information below. Give period of treatment under "From/To" starting from the present.
For all the reasons treated above, this court finds that question 25 is overbroad. It is not limited by time, nor by severity of the mental disorder. If substance abuse, which may contain some element of volition, is too private for a less open-ended inquiry, then certainly mental illness, which no one chooses, must be considered at least as private. The Board has not shown this court that it cannot protect its integrity unless its applicants volunteer such exhaustive information about their mental condition. The Board argues that the question is not overly intrusive since "only upon an affirmative answer to the question `Have you ever had a nervous breakdown or have you ever had medical treatment for a mental condition' is an employee required to provide any details of medical treatment." This argument does not pass the "straight face" test, let alone persuade this court. Furthermore, the cases cited by the Board in which similar questions were found not to violate applicant's privacy rights are not applicable here. The first involved an applicant for a "sensitive" position within the Peace Corps, an organization which sends American volunteers to work in various foreign countries, Anonymous v. Kissinger, 499 F.2d 1097 (D.C.Cir. 1974). The other concerned police officers applying for positions with a special investigation unit, charged with exercising centralized control over internal corruption investigations, internal disciplinary investigations and vice investigations, Fraternal Order of Police, 812 F.2d 105. Both of those positions implicate security concerns which the Board has not shown here. To force these plaintiffs to answer question 25 as a condition of their employment is therefore an impermissible violation of their constitutional right to privacy.

IV. Financial Information

Questions 28 and 29 probe applicants' (and their spouses') financial history and status. Summary judgment on the constitutionality of those questions is not appropriate at this juncture.
The plaintiffs have submitted an affidavit alleging that a computer programmer simply could not manipulate a particular person's benefits, or manipulate the computer system in order to obtain personal financial gain. Rather, Helen Bell, who has been a Board employee for the past 29 years, and a programmer for the last 19, has sworn that no one in any of the positions in question has access to any data specific to an individual beneficiary, and no one in those positions could, as the Board has argued, secretly profit by altering an individual's entitlement. Affidavit of Helen Bell, Plaintiffs' Ex. F in Support of their Cross-Motion for Summary Judgment.
The Board, on the other hand, has submitted an affidavit to support its argument that questions 28 and 29 are necessary to protect the integrity of the funds handled through its computer system (and not to confirm the general trustworthiness of a particular applicant).[2] The parties do not agree whether computer operators might effect the security of the funds handled by the Board. Furthermore, the Board has not offered any evidence demonstrating *457 that one is better able to predict whether an applicant would intentionally damage the computer system if one knows whether the applicant has ever suffered any financial woes. This court therefore denies both parties' motions for summary judgment on plaintiffs' claim that questions 28 and 29 are unconstitutional.

V. Authority For Release of Information

Plaintiffs have raised several challenges to the Authority for Release of Information,[3] which they are required to sign in connection with SF86.
Plaintiffs maintain in Count 8 of their complaint that the Board's requirement that they sign the Authority for Release of Information exceeds the Board's authority under the Privacy Act, specifically, 5 U.S.C. § 552a(b). That section prohibits an agency from disclosing "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, [except under certain limited circumstances]."
First, the Release Form authorizes the collection of information which this court has now held cannot constitutionally be gathered, such as mental health records. Furthermore, the Release Form specifies neither the purpose for redisclosure of that information, nor the persons to whom disclosure may be made. Yet OMB guidelines, and the statute itself, clearly intend that the agency specify those matters.[4] This court will not sanction the Board's release of highly personal information with nothing more than the admonition that it will be released only "as authorized by law", particularly in light of the fact that the Board further requires the signator of the form to release from liability anyone who, "on account of ... attempts to comply with [the] authorization" causes damage to the signator. The authorization is so unclear that it is safe to predict that damages will arise from attempts to comply with it. This court therefore finds that, pursuant to 5 U.S.C. § 552a(b), the Board is simply not authorized to require applicants to sign the Release Form as a condition of employment.
Since this court has decided that the Board cannot require applicants to sign the Release Form pursuant to § 552a(b), it need not consider Counts 9-11 of plaintiffs' complaint, which allege that the Release Form violates other provisions of the Privacy *458 Act, as well as their constitutional right to privacy.

VI. Sensitive Positions

Plaintiffs challenge, in the 13th and last count of their complaint, that the Board's designation of their positions as "sensitive" (in order to lawfully authorize investigations of persons selected to fill those positions) as arbitrary and capricious. That argument may be disposed of quickly.
The Board is authorized by OMB (Office of Management and Budget) circular No. A-130 to impose personnel security requirements for employees "associated with the design, programming, operation, maintenance or use of Federal automated information systems." The circular, issued pursuant to the Paperwork Reduction Act, 44 U.S.C. § 3501 et seq., also states that "[r]equirements for personnel checks imposed by these policies should vary commensurate with the risk and magnitude of loss or harm that could be caused by the individual." 50 Fed.Regs. 52738, 52744.
Thus, the Board is correct in its argument that "it is properly within the [Board's] authority to establish personnel security procedures to safeguard [its computer system]." Defendant's Memorandum in Reply to Plaintiffs' Cross Motion for Summary Judgment at 4. As discussed above, it is undisputed that the Board's computer operators have the potential to damage a system responsible for providing benefits to over 900,000 people. To be wrong is not necessarily to be either arbitrary or capricious, and would not be so in this case. While the specific measures implemented by the Board may be challenged, as here, the Board is authorized to establish lawful procedures to protect its own integrity.

VII. Conclusion

This court grants summary judgment to the plaintiffs on counts 1, 3, 4, 5 and 8. Counts 2, 7, 9, 10, 11, and 12 are dismissed as moot. Defendant is granted summary judgment on count 13. Count 6 remains pending.
NOTES
[1] This right not to volunteer secrets is quite different than the right to take various actions, which has also been classified as a `privacy' right, and reflected in the line of cases beginning with Griswold v. Connecticut, 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965).
[2] This court notes that some of the information sought by the Board, such as whether the applicant has ever filed for bankruptcy or been the subject of a tax lien is already a matter of public record.
[3] The signator of the Release authorizes: "any duly accredited representative of the Federal Government, including those from [OPM], the [FBI], and the Department of Defense, to obtain any information relating to my activities from schools, residential management agents, employers, criminal justice agencies, financial or lending institutions, credit bureaus, consumer reporting agencies, retail business establishments, medical institutions, hospitals or other repositories of medical records, or individuals. This information may include, but is not limited to, my academic, residential, achievement, performance, attendance, personal history, disciplinary, criminal history record, arrest, conviction, medical, psychiatric/psychological, and financial and credit information." The signator further authorizes "[OPM], the [FBI], the Department of Defense, and any other authorized agency, to request criminal history record information about me from criminal justice agencies for the purpose of determining my eligibility for access to classified information, or assignment to, or retention in, sensitive national security duties, in accordance with 5 U.S.C. 9101." The signator directs the release of "such information upon request of the duly accredited representative of any authorized agency regardless of any agreement I may have made with you previously to the contrary." The signator "understand[s] that the information you release is for official use by the Federal Government, and that these users may redisclose the information you release as authorized by law." Finally, the signator "release[s] any individual, including records custodians, from all liability for damages that may result to me on account of compliance or any attempts to comply with this authorization. This release is binding, now and in the future, on my heirs, assigns, associates, and personal representative(s) of any nature. Copies of this authorization that show my signature are as valid as the original release signed by me."
[4] The OMB Guidelines provide that "[t]he consent provision of [§ 552a(b)] was not intended to permit a blanket or open-ended consent clause: i.e. one which would permit the agency to disclose a record without limit. At a minimum, the consent clause should state the general purposes for or the types of recipients, to which disclosure may be made. 40 Fed.Reg. at 28954.