Officer Melissa **KALLSTROM, et al., Plaintiffs–Appellants,**

v.

**CITY OF COLUMBUS, Defendant–Appellee.**

No. 96–3853.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 5, 1997.

Decided Feb. 12, 1998.

Kirk L. Somers (briefed), Daniel F. Marinik, Marshall & Melhorn, Toledo, OH, Richard M. Kerger (argued), Kerger & Kerger, Toledo, OH, for Melissa Kallstrom.

Kirk L. Somers (briefed), Daniel F. Marinik, Marshall & Melhorn, Toledo, OH, Richard M. Kerger, Kerger & Kerger, Toledo, OH, for Thomas Coelho.

Kirk L. Somers, Daniel F. Marinik, Marshall & Melhorn, Toledo, OH, Richard M. Kerger, Kerger & Kerger, Toledo, OH, for Gary Householder.

Glenn B. Redick (argued and briefed), Columbus City Attorney's Office, Civil Division, Columbus, OH, for City of Columbus.

Before: KRUPANSKY, SILER, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

We are called upon in this appeal to consider whether the plaintiffs, undercover officers for the Columbus Police Department, have a privacy interest of a constitutional dimension in certain personal information contained in their personnel files. We hold that the plaintiffs do indeed have a constitutionally protected privacy interest under the substantive component of the Fourteenth Amendment's Due Process Clause. Accordingly, we conclude that the Fourteenth Amendment prohibits the City of Columbus ("the City") from disclosing certain personal information contained in the plaintiffs' personnel files absent a showing that such disclosure narrowly serves a compelling state interest. We therefore reverse the district court's dismissal of the plaintiffs' claims for damages. With respect to the plaintiffs' motion for preliminary and permanent injunctions, we hold that it is premature to issue an injunction prohibiting the City from releasing to members of the public certain personal information concerning the plaintiffs. We believe, however, that the plaintiffs are entitled to injunctive relief requiring the City to provide notice to the plaintiffs prior to releasing information contained in their personnel files to members of the public.

## I. FACTS AND PROCEDURAL HISTORY

The three plaintiffs, Melissa Kallstrom, Thomas Coelho, and Gary Householder, are undercover officers employed by the Columbus Police Department. All three were actively involved in the drug conspiracy investigation of the Short North Posse, a violent gang in the Short North area of Columbus, Ohio. In *United States v. Derrick Russell, et al.*, No. CR–2 95–044, (S.D.Ohio), forty-one members of the Short North Posse were prosecuted on drug conspiracy charges. Plaintiffs testified at the trial of eight of the *Russell* defendants.

During the *Russell* criminal trial, defense counsel requested and obtained from the City Kallstrom's personnel and pre-employment file, which defense counsel appears to have passed on to several of the *Russell* defendants. *See* Joint Appendix ("J.A.") at 45–46 (Kallstrom Aff.). Officers Coelho and Householder also suspect that copies of their personnel and pre-employment files were obtained by the same defense attorney. The City additionally released Officer Coelho's file to the Police Officers for Equal Rights organization following its request for the file in the fall of 1995 in order to investigate possible discriminatory hiring and promotion practices by the City. The officers' personnel files include the officers' addresses and phone numbers; the names, addresses, and phone numbers of immediate family members; the names and addresses of personal references; the officers' banking institutions and corresponding account information, including account balances; their social security numbers; responses to questions regarding their personal life asked during the course of polygraph examinations; and copies of their drivers' licenses, including pictures and home addresses. J.A. at 38–48 (Officers' Affs.). The district court found that in light of the Short North Posse's propensity for violence and intimidation, the release of these personnel files created a serious risk to the personal safety of the plaintiffs and those relatives named in the files. J.A. at 89 (Dist. Ct. Op. and Order).

Prior to accepting employment with the City, the plaintiffs were assured by the City that personal information contained in their files would be held in strict confidence. J.A. at 39, 42, 46–47 (Officers' Affs.). Despite its earlier promise of confidentiality, however, the City believed Ohio's Public Records Act, OHIO REV.CODE ANN. § 149.43 (BanksBaldwin

1997), required it to release the officers' files upon request from any member of the public.

The officers brought suit under 42 U.S.C. §§ 1983 and 1988 against the City, claiming that the dissemination of personal information contained in their personnel files violates their right to privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment. The officers also claim that the City's actions violate their rights under state law, specifically OHIO REV.CODE ANN. §§ 2921.24 and 102.03(B) (Banks–Baldwin 1997). In addition to seeking compensatory damages, the officers request an injunction restraining the City from releasing personal information regarding them.

The district court initially issued a temporary restraining order prohibiting the City from releasing to any person the addresses and phone numbers of the officers and their immediate family members, their family members' names, and copies of the officers' driver's licenses. The officers' comfort was short-lived. Upon reviewing the officers' request for preliminary and permanent injunctions, the district court determined that the law of this circuit foreclosed the officers' constitutional claims. Specifically, the court concluded that the Sixth Circuit has "steadfastly refused to recognize a general constitutionally-protected right to privacy that would shield an individual from government release of personal information about the individual." J.A. at 88 (Dist. Ct. Op. at 4). The district court thereupon entered final judgment for the City, and this appeal ensued regarding the officers' constitutional claims.

## II. SECTION 1983 CLAIM

■ Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The threshold question, therefore, is whether the City deprived the officers of a right "secured by the Constitution and laws." *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692–93, 61 L.Ed.2d 433 (1979).

## A. Due Process—Fundamental Privacy Right

■ The officers claim that in releasing personal information from the officers' personnel files, the City denied the officers rights granted to them under the Due Process Clause of the Fourteenth Amendment, specifically, their right to privacy. Although a literal reading of the Due Process Clause may suggest that the clause governs only the procedures by which the State may deprive an individual of life, liberty, or property, the Supreme Court has long recognized that the clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). This substantive component of the Due Process Clause includes not only the privileges and rights expressly enumerated by the Bill of Rights, but includes the fundamental rights " 'implicit in the concept of ordered liberty,' " *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 151–52, 82 L.Ed. 288 (1937)), and "deeply rooted in this Nation's history and tradition[s]." *Moore v. City of East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977).

The officers contend that the release of the personal information contained in their personnel files infringes upon their right to privacy. Although the Supreme Court first recognized this right over thirty years ago, *see Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (recognizing married couples' right to privacy with respect to the use of contraception), the boundaries of the right to privacy have not been clearly delineated. The privacy cases have developed along two distinct lines. The first line of cases involves the individual's interest in independent decision making in important life-shaping matters, while the second line of cases recognizes the individual's interest in avoiding disclosure of highly personal matters. *See Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 875–77, 51 L.Ed.2d 64 (1977).

Cases concerning an individual's interest in autonomy have extended constitutional protection to activities relating to marriage, *see Griswold*, 381 U.S. at 484–86, 85 S.Ct. at 1681–83; *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), procreation, *see Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), contraception, *see Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold*, 381 U.S. at 485, 85 S.Ct. at 1682, family relationships, *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), and child rearing, *see Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). The officers claim the City's disclosure of the personal information contained in their personnel records implicates their fundamental interest in family relationships, or "the right not to have your family subject to harm merely because of your career." J.A. at 18 (Pls.' Mem. in Supp. of Mot. for T.R.O. at 8). The release of the information at issue does not seriously infringe upon the intimate decisionmaking incidental to protection of the family. As the Fifth Circuit explained, "[t]he appropriate question is: What impact will [the] disclosure have upon the way intimate family and personal decisions are made? Will it affect the decision whether to marry? Will it determine when or if children are born?" *Plante v. Gonzalez*, 575 F.2d 1119, 1131 (5th Cir. 1978) (holding that financial disclosure laws undeniably have some influence on intimate decisionmaking, but not on the kinds of decisions protected by the autonomy line of cases protecting the family), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). The officers have simply not convinced us that the release of the personal information contained in their personnel files has more than a *de minimis* impact on intimate family decisions.

In *Whalen v. Roe*, the Supreme Court declared that the constitutional right to privacy grounded in the Fourteenth Amendment respects not only individual autonomy in intimate matters, but also the individual's interest in avoiding divulgence of highly personal information. *See Whalen*, 429 U.S. at 599–600, 97 S.Ct. at 876–77. The court echoed these sentiments in *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), acknowledging that "[o]ne element of privacy has been characterized as 'the individual interest in avoiding disclosure of personal matters.'" *Id.* at 457, 97 S.Ct. at 2797. Although *Whalen* and *Nixon* appear to recognize constitutional protection for an individual's interest in safeguarding personal matters from public view, in both cases the Court found that public interests outweighed the individuals' privacy interests. *See Whalen*, 429 U.S. at 602–04, 97 S.Ct. at 877–79 (upholding a New York law that required physicians to compile prescription records containing detailed patient information for a centralized state-run database); *Nixon*, 433 U.S. at 465, 97 S.Ct. at 2801 (compelling President Nixon to disclose personal communications to government archivists in light of the important public interest in preserving the materials, Nixon's diminished expectation of privacy in the bulk of the materials, and other factors).

This circuit has read *Whalen* and *Nixon* narrowly, and will only balance an individual's interest in nondisclosure of informational privacy against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension. *See J.P. v. DeSanti*, 653 F.2d 1080, 1091 (6th Cir.1981).[1] In *DeSanti*, juveniles in Ohio claimed that the post-adjudication dissemination of their social histories to governmental, social, and religious agencies that were members of a "social services clearinghouse" violated their constitutional right to privacy. In reversing the

---

1. Other circuits have interpreted *Whalen* and *Nixon* as creating a broad constitutional right to informational privacy to be balanced against the public's interest in and need for the invasion of privacy. *See, e.g., Doe v. Attorney Gen. of the United States*, 941 F.2d 780, 796 (9th Cir.1991); *Flanagan v. Munger*, 890 F.2d 1557, 1570–71

(10th Cir.1989); *Barry v. City of New York*, 712 F.2d 1554, 1559 (2d Cir.), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983); *Fadjo v. Coon*, 633 F.2d 1172, 1175–76 (5th Cir. 1981); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir.1980).

district judge's finding that such dissemination would violate the juveniles' constitutional rights to privacy, this court rejected the notion of a general constitutional right of nondisclosure of personal information against which the governmental action must be weighed. *See id.* at 1088–89. Relying on *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), in which the Supreme Court held that police circulation of a flyer publicizing respondent's arrest for shoplifting did not violate any constitutional right to privacy because the state did not "restrict his freedom of action in a sphere contended to be 'private,'" and because the state has an interest in "publiciz[ing] a record of an official act such as an arrest," *id.* at 713, 96 S.Ct. at 1166, this court stated in *DeSanti* that any constitutional right to privacy must be restricted to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *DeSanti,* 653 F.2d at 1090 (citations omitted). While the opinion in *DeSanti* did not hold that there is *never* a constitutional right to nondisclosure of private information, it did conclude that "not all rights of privacy or interests in nondisclosure of private information are of constitutional dimension, so as to require balancing government action against individual privacy." *Id.* at 1091. The question then is whether the officers' privacy interests in the personal information contained in their personnel records "are of constitutional dimension." We hold that the officers' privacy interests do indeed implicate a fundamental liberty interest, specifically their interest in preserving their lives and the lives of the their family members, as well as preserving their personal security and bodily integrity.

### 1. Personal Security and Bodily Integrity

 The liberty interests preserved by the Due Process Clause of the Fifth Amendment, later incorporated into the Fourteenth Amendment, include "those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska,* 262 U.S. at 399, 43 S.Ct. at 626; *see also Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413–14, 51

L.Ed.2d 711 (1977). Among the historic liberties long cherished at common law was the right to be free from "unjustified intrusions on personal security." *See Ingraham,* 430 U.S. at 673, 97 S.Ct. at 1413. As far back as 1891, the Supreme Court recognized that "[n]o right is held more sacred, or is more carefully guarded ... than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. v. Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891). Although threats to personal security usually arise in the context of government-imposed punishment or physical restraint, courts have not limited protection of this historic interest to those settings. *See, e.g., Winston v. Lee,* 470 U.S. 753, 764–66, 105 S.Ct. 1611, 1618–20, 84 L.Ed.2d 662 (1985) (holding that compelling a robbery suspect to undergo surgical operation to remove from his body a bullet fired by the victim would be an "extensive intrusion on [the suspect's] personal privacy and bodily integrity," and thus an unreasonable search and seizure under the Fourth Amendment); *Cruzan v. Director, Missouri Dep't of Health,* 497 U.S. 261, 278, 110 S.Ct. 2841, 2851, 111 L.Ed.2d 224 (1990) (acknowledging that a competent person has a constitutionally protected liberty interest under the Fourteenth Amendment in refusing unwanted medical treatment); *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 857, 112 S.Ct. 2791, 2810, 120 L.Ed.2d 674 (1992) (stating that the right to an abortion reflects respect for "personal autonomy and bodily integrity, with doctrinal affinity to cases recognizing limits on governmental power to mandate medical treatment or to bar its rejection"); *Doe v. Claiborne County,* 103 F.3d 495, 507 (6th Cir.1996) (the right to personal security and to bodily integrity under the Due Process Clause encompasses the right not to be sexually assaulted by a government actor); *see also Doe v. Taylor Indep. Sch. Dist.* 15 F.3d 443, 450–52 (5th Cir.1994) (en banc) (same); *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 727 (3d Cir.1989) (same). Individuals have "a clearly established right under the substantive component

of the Due Process Clause to personal security and to bodily integrity," and this right is fundamental where "the magnitude of the liberty deprivation that [the] abuse inflicts upon the victim ... strips the very essence of personhood." *Claiborne*, 103 F.3d at 506–07. Finally, it goes without saying that an individual's "interest in preserving her life is one of constitutional dimension." *Nishiyama v. Dickson County*, 814 F.2d 277, 280 (6th Cir.1987) (en banc).

 In light of the Short North Posse's propensity for violence and intimidation, the district court found that the City's release of the plaintiffs-appellants' addresses, phone numbers, and driver's licenses to defense counsel in the *Russell* case, as well as their family members' names, addresses, and phone numbers, created a serious risk to the personal safety of the plaintiffs and those relatives named in the files. *See* J.A. at 57 (T.R.O.) and 89 (Op. and Order). We see no reason to doubt that where disclosure of this personal information may fall into the hands of persons likely to seek revenge upon the officers for their involvement in the *Russell* case, the City created a very real threat to the officers' and their family members' personal security and bodily integrity, and possibly their lives.[2] Accordingly, we hold that the City's disclosure of this private information about the officers to defense counsel in the *Russell* case rises to constitutional dimensions, thereby requiring us under *DeSanti* to balance the officers' interests against those of the City.[3]

2. The district court did not make any explicit findings with respect to whether disclosure of the remaining personal information contained in the officers' personnel files—results of the polygraph tests, social security numbers, and financial account information—put the officers at substantial risk of serious bodily harm. On remand, the district court should consider the extent to which the release of this information jeopardized the officers' personal security, and whether the threat, if any, implicated the officers' constitutionally protected interests in privacy and bodily integrity.

3. The officers argue that their privacy interest in the personal information contained in their personnel files deserves constitutional protection in part because the City promised the officers that this information would be kept confidential. We do not consider the City's promise at all relevant to our decision. The courts of Ohio have repeatedly invalidated official promises of confidentiality where the material designated as confidential would otherwise be considered a public record under state law. *See, e.g., State ex rel. Gannett Satellite Info. Network v. Shirey*, 78 Ohio St.3d 400, 678 N.E.2d 557, 560 (1997) (holding that because contractual provision designating as confidential applications and resumes for city position could not alter public nature of information, applications and resumes were subject to disclosure under Ohio's Public Records Act); *State ex rel. Dispatch Printing Co. v. Wells*, 18 Ohio St.3d 382, 481 N.E.2d 632, 634 (1985) (holding invalid a provision in collective bargaining agreement between city and its police force requiring city to ensure confidentiality of officers' personnel records because otherwise "private citizens would be empowered to alter legal relationships between a government and the public at large"); *State ex rel. Nat'l Broadcasting Co. v. City of Cleveland*, 82 Ohio App.3d 202, 611 N.E.2d 838, 844 (1992) ("The city ... cannot enter into enforceable promises of confidentiality with respect to public records."). We are therefore bound under Ohio law to hold invalid the promise of confidentiality extended to the officers by the City of Columbus.

Even if the City had required the officers to waive their constitutionally protected right to privacy as a condition of employment, our decision would be the same. In the First Amendment context, the Supreme Court has repeatedly held that "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). That a public employee may have voluntarily waived her First Amendment rights in accepting employment does not foreclose her constitutional claim, and courts will undertake a balancing of the employee's First Amendment interests and the state's interests despite the waiver. *Id.; United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 564, 93 S.Ct. 2880, 2889–90, 37 L.Ed.2d 796 (1973); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). We join the Third Circuit in holding that this balancing standard is "equally as applicable to employees' privacy rights as to their First Amendment rights." *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 112 (3d Cir.1987); *see also American Fed'n of Gov't Employees, R.R. Retirement Bd. Council, AFL–CIO v. United States R.R. Retirement Bd.*, 742 F.Supp. 450, 453–56 (N.D.Ill. 1990) (holding that requiring applicants to answer certain questions as a condition of employment impermissibly infringes upon their constitutionally protected right to privacy as well as their Fifth Amendment right against self-incrimination); *cf. McDonell v. Hunter*, 809 F.2d 1302, 1310 (8th Cir.1987) (holding that the state may

The district court found that although there was no indication that the Police Officers for Equal Rights organization posed any threat to the officers and their family members, disclosure even to that group of the officers' phone numbers, addresses, and driver's licenses, and their family members' names, addresses and phone numbers "increases the risk that the information will fall into the wrong hands." J.A. at 57 (T.R.O.). The district court, however, made no finding with respect to the magnitude of this increased risk. Since the district court did not indicate its view of the severity of risks inherent in disclosure of information to the Police Officers for Equal Rights organization, we remand to the district court for reconsideration in light of this opinion of issues regarding disclosure of personal information to that organization.

■■■ In finding that the City's release of private information concerning the officers to defense counsel in the *Russell* case rises to constitutional dimensions by threatening the personal security and bodily integrity of the officers and their family members, we do not mean to imply that every governmental act which intrudes upon or threatens to intrude upon an individual's body invokes the Fourteenth Amendment. But where the release of private information places an individual at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat, the "magnitude of the liberty deprivation ... strips the very essence of personhood." *Claiborne*, 103 F.3d at 506–07. Under these circumstances, the governmental act "reaches a level of significance sufficient to invoke strict scrutiny as an invasion of personhood." LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW 1333 (2d ed.1988).

## 2. Balancing the Officers' Interests Against the Government's Interests

■■■ Where state action infringes upon a fundamental right, such action will be upheld under the substantive due process component of the Fourteenth Amendment only where the governmental action furthers a compelling state interest, and is narrowly drawn to further that state interest. *See Roe v. Wade*, 410 U.S. at 155, 93 S.Ct. at 727–28; *Griswold*, 381 U.S. at 497, 85 S.Ct. at 1688–89 (Goldberg, J., concurring). Having found that the officers have a fundamental constitutional interest in preventing the release of personal information contained in their personnel files where such disclosure creates a substantial risk of serious bodily harm, we must now turn to whether the City's actions narrowly serve a compelling public purpose.

■■■ The City believed Ohio's Public Records Act, OHIO REV.CODE ANN. § 149.43 (Baldwin–Banks 1997), required it to disclose the personal information contained in the officers' records. Ohio's Public Records Act requires the state to make available all public records to any person, OHIO REV.CODE ANN. § 149.43(B) (Baldwin–Banks 1997), unless the record falls within one of the statute's enumerated exceptions.[4] The State man-

not require as a condition of employment waiver of the Fourth Amendment right to be free from unreasonable searches). Thus, even if the police officers could be said to have waived their constitutionally protected privacy interests as a condition of employment, this waiver would not terminate our inquiry into whether the disclosure of private information contained in their personnel files violates their rights to due process under the Fourteenth Amendment.

4. At oral argument, the City maintained that the personal information contained in the officers' personnel files was exempt from the Ohio Public Records Act's general disclosure requirement under OHIO REV CODE ANN. § 149.43(A)(1)(h) (Banks–Baldwin 1997). Section 149.43(A)(1)(h) exempts "confidential law enforcement investigatory records," which are then defined as "any

record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or *administrative* nature, but only to the extent that the release of the record would create a high probability ... that [disclosure] would endanger the life or physical safety of law enforcement personnel." OHIO REV.CODE ANN. § 149.43(A)(2)(d) (Banks–Baldwin 1997) (emphasis added). The Ohio Supreme Court has interpreted "law enforcement matter" of an "administrative nature" as meaning internal investigations undertaken pursuant to a specific suspicion of criminal wrongdoing, and not reports compiled by law enforcement agencies to assist in employment decisions. *See State ex rel. Multimedia, Inc. v. Snowden*, 72 Ohio St.3d 141, 647 N.E.2d 1374, 1377–78 (1995). Ohio courts have thus required the release of personnel background records, including criminal and traffic records, polygraph

dates release of state agency records in order to shed light on the state government's performance, thereby enabling Ohio citizens to understand better the operations of their government. *See State ex rel. Strothers v. Wertheim,* 80 Ohio St.3d 155, 684 N.E.2d 1239, 1242 (1997) ("One of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed"); *cf. United States Dep't of Defense v. Federal Labor Relations Auth.,* 510 U.S. 487, 495–97, 114 S.Ct. 1006, 1012–14, 127 L.Ed.2d 325 (1994) (stating that the purpose of the federal Freedom of Information Act, 5 U.S.C. § 552, is to "she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to" (quotation omitted) (alteration in original)). In the judicial setting, courts have long recognized the importance of permitting public access to judicial records so that citizens may understand and exercise oversight over the judicial system. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978); *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.),* 21 F.3d 24, 26 (2d Cir.1994); *Littlejohn v. BIC Corp.,* 851 F.2d 673, 678 (3d Cir.1988). We see no reason why public access to government agency records should be considered any less important. For purposes of this case, we assume that the interests served by allowing public access to agency records rises to the level of a compelling state interest. Nevertheless, the City's release to the criminal defense counsel of the officers' and their family members' home addresses and phone numbers, as well as the family members' names and the officers'

driver's licenses, does not narrowly serve these interests.

While there may be situations in which the release of the this type of personal information might further the public's understanding of the workings of its law enforcement agencies, the facts as presented here do not support such a conclusion. The City released the information at issue to defense counsel in a large drug conspiracy case, who is asserted to have passed the information onto his clients. We simply fail to see how placing this personal information into the hands of the *Russell* defendants in any way increases public understanding of the City's law enforcement agency where the *Russell* defendants and their attorney make no claim that they sought this personal information about the officers in order to shed light on the internal workings of the Columbus Police Department. We therefore cannot conclude that the disclosure narrowly serves the state's interest in ensuring accountable governance. Accordingly, we hold that the City's actions in automatically disclosing this information to any member of the public requesting it are not narrowly tailored to serve this important public interest.

**B. State Action Requirement**

■ The Due Process Clause of the Fourteenth Amendment does not impose upon the state an affirmative duty to protect its citizens against private acts of violence, but rather, places limitations on affirmative state action that denies life, liberty, or property without due process of law. *See DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 1002–

examination reports, personal history questionnaires, police psychologist reports, background investigation reports, and credit histories for all members of a city's police recruit class, *see id.* 647 N.E.2d at 1376, and the results of polygraph examinations administered to applicants for employment with a municipal police department. *See State ex rel. Lorain Journal Co. v. City of Lorain,* 87 Ohio App.3d 112, 621 N.E.2d 894 (1993). Applying Ohio law, the U.S. District Court for the Northern District of Ohio has ordered release of a prehire background investigation report for an applicant to the Ohio State Highway Patrol. *See Dinkins v. Ohio Div. of Hwy. Patrol,* 116 F.R.D. 270 (N.D.Ohio 1987). Because the plaintiffs' personal information was

contained in personnel records compiled as part of routine personnel practices, and not as part of any internal investigation stemming from a specific suspicion of wrongdoing, the records at issue do not qualify for the "confidential law enforcement record" exemption to Ohio's general public record disclosure requirement under binding precedent from the Ohio Supreme Court. *See Snowden,* 647 N.E.2d at 1377–78; *see also State ex rel. Police Officers for Equal Rights v. Lashutka,* 72 Ohio St.3d 185, 648 N.E.2d 808 (1995) (strenuously ordering release of records of police Internal Affairs Bureau investigations, chain of command investigations, and other like records pursuant to OHIO REV.CODE ANN. § 149.43 (Banks–Baldwin 1997)).

03, 103 L.Ed.2d 249 (1989). In *DeShaney*, the Supreme Court stated that the Due Process Clause imposed an affirmative duty to protect an individual against private acts of violence where a "special relationship" exists between the state and the private individual, such as when the state takes a person into its custody. *See id.* at 199–201, 109 S.Ct. at 1005–06. Applying this principle to the facts in *DeShaney*, the Supreme Court did not find a due process violation where a young child, Joshua DeShaney, suffered serious harm at the hands of his father after the state failed to remove the child from the father's custody. *See id.* at 201, 109 S.Ct. at 1006. Thus, before holding the City liable for violation of the officers' constitutional rights to privacy, we must address whether the actions or potential actions of private actors, namely the gang members of the Short North Posse, can be attributed to the City.

In *DeShaney*, the Court left open the possibility that the state may be liable for private acts which violate constitutionally protected rights despite the absence of a special relationship. The Court stated that, "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, *it played no part in their creation, nor did it do anything to render him any more vulnerable to them.*" *Id.* at 201, 109 S.Ct. at 1006. Several courts of appeals have cited this statement as support for recognizing a constitutional violation under a state-created-danger theory of liability. *See Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir.1996); *Uhlrig v. Harder*, 64 F.3d 567, 572 n. 7 (10th Cir.1995); *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir.1993); *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993); *Freeman v. Ferguson*, 911 F.2d 52, 55 (8th Cir.1990). In other words, while the state generally does not shoulder an affirmative duty to protect its citizens from private acts of violence, it may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts. Although our circuit has never held the state or a state actor liable under the Fourteenth Amendment for private acts of violence, we nevertheless have recognized the possibility of doing so under the state-created-danger theory. *See Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 912–13 (6th Cir.1995); *Jones v. City of Carlisle*, 3 F.3d 945, 949–50 (6th Cir.1993).

Liability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence. *See Sargi*, 70 F.3d at 913; *see also D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1374 (3d Cir.1992) (en banc). As explained by the Seventh Circuit, "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982). However, because many state activities have the potential to increase an individual's risk of harm, we require plaintiffs alleging a constitutional tort under § 1983 to show "special danger" in the absence of a special relationship between the state and either the victim or the private tortfeasor. The victim faces "special danger" where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large. *See Jones*, 3 F.3d at 949; *Janan v. Trammell*, 785 F.2d 557, 560 (6th Cir.1986); *see also Mitchell v. Duval County Sch. Bd.*, 107 F.3d 837, 839 (11th Cir.1997). *But see Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.1993) (finding that plaintiffs may state a claim under § 1983 where they allege state action that creates or contributes to the creation of a danger rendering citizens more vulnerable to harm). The state must have known or clearly should have known that its actions specifically endangered an individual. *See Janan*, 785 F.2d at 560 (finding no liability where plaintiff did not claim that the state actors should have known that their actions endangered the decedent); *see also Cornelius v. Town of Highland Lake*, 880 F.2d 348, 355–57 (11th Cir.1989) (finding special danger where town knew plaintiff worked in the building where it placed work squad inmates, who later abducted and terrorized plaintiff).

Applying the state-created-danger theory to the facts of this case, we hold that the City's actions placed the officers and their family members in "special danger" by substantially increasing the likelihood that a private actor would deprive them of their liberty interest in personal security. Anonymity is essential to the safety of undercover officers investigating a gang-related drug conspiracy, especially where the gang has demonstrated a propensity for violence. In affirmatively releasing private information from the officers' personnel files to defense counsel in the *Russell* case, the City's actions placed the personal safety of the officers and their family members, as distinguished from the public at large, in serious jeopardy. The City either knew or clearly should have known that releasing the officers' addresses, phone numbers, and driver's licenses and the officers' families' names, addresses, and phone numbers to defense counsel in the *Russell* case substantially increased the officers' and their families' vulnerability to private acts of vengeance. We therefore hold that the City's policy of freely releasing this information from the undercover officers' personnel files under these circumstances creates a constitutionally cognizable "special danger," giving rise to liability under § 1983.

### C. Injunctive Relief

In addition to seeking damages under § 1983 for the City's past disclosure of certain personal information contained in their personnel files, the officers also requested both preliminary and permanent injunctive relief under FED.R.CIV.P. 65 to require the City "to maintain in confidence the personal information regarding plaintiffs." J.A. at 8 (Compl. at 5). Where a party seeks a preliminary injunction, the district court must consider the following factors:

(1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir.1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir.1995)). Where the plaintiff establishes a constitutional violation after a trial on the merits, the plaintiff will be entitled to permanent injunctive relief upon showing 1) a continuing irreparable injury if the court fails to issue the injunction, and 2) the lack of an adequate remedy at law. *See Dayton Christian Sch., Inc. v. Ohio Civil Rights Comm'n*, 766 F.2d 932, 961 (6th Cir.1985) (quoting *Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983)); *see also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959). The decision to grant or deny a preliminary or permanent injunction is within the sound discretion of the district court. *See Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir.1994); *Tyson Foods, Inc. v. McReynolds*, 865 F.2d 99, 101 (6th Cir.1989). A district court's denial of injunctive relief based upon a legal error, which we review de novo, or a factual error, which we review for clear error, may be sufficient to constitute an abuse of discretion. *See McPherson*, 119 F.3d at 459. For the reasons explained below, we hold that the officers are not entitled to injunctive relief setting forth a blanket prohibition against the future release of information contained in their personnel files. The procedural component of the Fourteenth Amendment's Due Process Clause, however, at a minimum requires that the City notify the officers of a request for their addresses, phone numbers, and driver's licenses, and the names, addresses, and phone numbers of their family, prior to releasing this information so that they may have the opportunity to invoke their constitutionally protected rights to privacy and personal security.

The district court's denial of the officers' request for preliminary and permanent injunctions rests upon the legal conclusion that this court's decision in *DeSanti* foreclosed the officers' privacy claim. As explained above, we hold that the officers have established that the release of certain private information contained in their personnel files

violates their rights to privacy and personal security as guaranteed by the substantive component of the Fourteenth Amendment's Due Process Clause. The district court's denial of the officers' request for preliminary and permanent injunctions based on its interpretation of *DeSanti* was therefore improper. This conclusion, however, does not end our inquiry, for we also must consider whether the officers made the requisite factual showing entitling them to injunctive relief.

In order to obtain either a preliminary or permanent injunction, plaintiffs must demonstrate that failure to issue the injunction is likely to result in irreparable harm. *See McPherson,* 119 F.3d at 459; *Dayton Christian Sch.,* 766 F.2d at 961. We have no doubt that the officers or their family members would suffer irreparable harm should the threat to their personal security ever materialize. We question, however, whether at the present time any court could adequately assess the likelihood that the officers or their families will suffer such harm in the future should the City again release the officers' personnel files. Injunctive relief is a discretionary remedy which courts traditionally abstain from providing unless the controversy is ripe for judicial resolution. *See National Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 285 (6th Cir.1997); *Alcan Aluminium Ltd. v. Department of Revenue of the State of Oregon,* 724 F.2d 1294, 1299 (7th Cir.1984). Under the ripeness doctrine, a matter is considered premature for judicial review when the alleged injury is speculative or may never occur. *See O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Brown v. Ferro Corp.,* 763 F.2d 798, 801 (6th Cir.1985). The district court found that, in light of the Short North Posse's propensity for violence and intimidation, release of the officers' and their families' addresses and phone numbers, as well as the names of their family members and the officers' driver's licenses, created a serious risk to the personal safety of the officers and their families. *See* J.A. at 89 (Op. and Order). The *Russell* trial, however, has since ended. Moreover, without a clear development of the factual circumstances that would accompany any future release of personal information included in the officers'

personnel files, any finding regarding future risk to the personal safety of the officers and their families would be speculative. We therefore conclude that the controversy underlying the officers' request for injunctive relief prohibiting the City from releasing personal information contained in their personnel files is not ripe for judicial resolution at this time.

Although we believe that the district court properly refused the officers' request for injunctive relief containing a broad prohibition against the release of personal information about the officers, we nevertheless hold that the officers are entitled to notice prior to the release of any information contained in their personnel files that has the potential to compromise the personal security of the officers and their family members. The Due Process Clause prohibits the state from depriving an individual of life, liberty, or property without due process of law. The Supreme Court has explained that the central meaning of procedural due process is that " '[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified' ... 'at a meaningful time and in a meaningful manner.' " *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (quoting *Baldwin v. Hale,* 68 U.S. (1 Wall.) 223, 233, 17 L.Ed. 531 (1863), and *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)); *see also Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976) ("[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (quotation omitted). These procedural safeguards reflect "the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference." *Fuentes,* 407 U.S. at 81, 92 S.Ct. at 1994.

The City has voiced its intention to continue releasing all personal information contained in the officers' personnel files upon requests by members of the public for such information under Ohio's Public Records Act. Should this information fall into the wrong hands, the officers or their family

members may suffer serious and irreparable harm. No remedy at law could adequately compensate them for any physical, psychological, or emotional trauma they might suffer at the hands of one obtaining this personal information. Ohio's Public Records Act, however, does not require state agencies to notify public employees whenever a member of the public requests release of their personnel files. The City of Columbus is thus free under state law to release private information about the officers which potentially may jeopardize the officers' and their family members' personal safety without first notifying the officers. Such action betrays the fundamental notion of fairness underlying the Due Process Clause. If the officers and their families are to have a meaningful opportunity to protect themselves against unjustified or arbitrary deprivation of their fundamental rights to privacy and personal security, the City must provide the officers with prior notice and the opportunity to be heard. *See Fuentes,* 407 U.S. at 80–81, 92 S.Ct. at 1994–95; *cf. Doe v. Staples,* 706 F.2d 985, 989 (6th Cir.1983) (procedural due process requires that parent have notice and opportunity for a hearing before state may deprive parent of their fundamental interest in keeping physical custody of their children).

■■■■■■ Injunctive relief involving matters subject to state regulation may be no broader than necessary to remedy the constitutional violation. *See Knop v. Johnson,* 977 F.2d 996, 1008 (6th Cir.1992), *cert. denied,* 507 U.S. 973, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993); *Newman v. State of Alabama,* 559 F.2d 283, 288 (5th Cir.1977). As we stated

previously, the constitutional violation arises when the release of private information about the officers places their personal security, and that of their families, at substantial risk without narrowly serving a compelling state interest. Thus, the officers are entitled to notice and an opportunity to be heard prior to the release of private information contained in their personnel files only where the disclosure of the requested information could potentially threaten the officers' and their families' personal security. As discussed above, release of the officers' addresses, phone numbers, and driver's licenses, as well as their family members' names, addresses, and phone numbers, is likely to result in a substantial risk to their personal security. On remand, the district court should consider whether release of other private information contained in the officers' personnel files also poses the same risk. In reconsidering the officers' motion for injunctive relief, the district court should look to the framework established by the Supreme Court in *Mathews v. Eldridge*[5] in fashioning the procedural protections that are appropriate to provide the officers with meaningful notice and the opportunity to be heard.[6]

## III. CONCLUSION

We hold that because disclosure of the officers' addresses, phone numbers, and driver's licenses, as well as the names, addresses, and phone numbers of their family members, placed the officers and their families at substantial risk of serious bodily harm, the prior release of this information encroached upon their fundamental rights to privacy and personal security under the Due Process Clause

---

**5.** In determining which procedural protections are appropriate for a particular situation, *Mathews v. Eldridge* requires analysis of the governmental and private interests that are affected. *See id.* at 334, 96 S.Ct. at 902–03. More precisely, the courts should consider three distinct factors:

> First, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional

or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

**6.** In addition to their § 1983 claims, the officers also assert that the City's actions violated their rights under OHIO REV CODE ANN. §§ 2921.24 and 102.03(B) (Banks–Baldwin 1997). The district court did not address the officers' state claims, but simply entered final judgment in favor of the City and dismissed this action with prejudice. J.A. at 90 (Op. and Order). On appeal, the officers challenge only the dismissal of their § 1983 claim. We therefore hold that the officers have waived any challenge to the dismissal of their state claims.

of the Fourteenth Amendment. Because the City has not shown that its prior actions narrowly served a compelling state interest, its release of this personal information to defense counsel in the *Russell* case unconstitutionally denied the officers a fundamental liberty interest. Having deprived the officers of a constitutional right, the City is liable to them under § 1983 for any damages incurred. Moreover, because the City's decision to continue releasing this information potentially places the officers and their families at risk of irreparable harm that cannot be adequately remedied at law, the officers are entitled to injunctive relief prohibiting the City from again disclosing this information without first providing the officers meaningful notice. Accordingly, we **RE-VERSE** the lower court order denying the officers' request for a preliminary and permanent injunction and dismissing their claims. We **REMAND** for further proceedings consistent with this opinion.