File Name: 05a0894n.06
Filed: November 10, 2005

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Nos. 04-6133/ 04-6307

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

ERIC HALL and wife LISA HALL, individually
and as next friends on behalf of the minor children,
JANE DOE 1, JANE DOE 2, and JANE DOE 3,

      Plaintiffs-Appellees,

v.

CITY OF COOKEVILLE, TENNESSEE,

      Defendant,

BOB TERRY, in his individual capacity; JIM
SHIPLEY, in his individual capacity,

      Defendants-Appellants,

STATE OF TENNESSEE,

Intervening Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

_____/

Before:     MARTIN, NELSON, and ROGERS, Circuit Judges.

     BOYCE F. MARTIN, JR., Circuit Judge.  Bob Terry, the Chief of Police of Cookeville,

Tennessee and City Manager Jim Shipley appeal the district court's denial of their request for

qualified immunity based on their roles in the release of Eric Hall's personnel file to the public.  For

the following reasons, we REVERSE the district court's judgment and hold that both Terry and

Shipley are entitled to qualified immunity. We further conclude that we lack appellate jurisdiction to hear Tennessee's appeal.

I.

On New Year's Day 2003, the Smoak family was pulled over on Interstate 40 by the Tennessee Highway Patrol under suspicion of committing armed robbery after a woman reported seeing money flying from their car. As the family of three was kneeling on the pavement, being handcuffed by the officers, the family dog, Patton, leapt out of the car and wagging his tail began moving towards Officer Eric Hall of the Cookeville Police Department. Officer Hall discharged his shotgun at Patton when he was approximately a foot away, killing Patton instantly.[1] The officers later discovered that Mr. Smoak had merely left his wallet atop the car after leaving a gas station and his money blew away. The entire traffic stop was taped and the video gained international notoriety.

After this highly-publicized event, Hall became the subject of intense media attention. Following a meeting with Shipley, Hall's attorney, and others, Hall agreed to be interviewed by a reporter from a Nashville news station on January 9th. In order to bolster Hall's appearance in the interview, the City released portions of his personnel file relating to Hall's disciplinary actions and commendations to the reporter. The record is unclear whether this release was done with Hall's knowledge or consent.

On January 10th, in response to media requests, the Putnam County Tax Assessor's office released copies of tax records which contained Hall's name, his wife's name, and their address. On that same day, print and television news media contacted the City and requested copies of Hall's

---

[1]This marked the third time in five years that Hall shot a dog while on duty.

personnel file. The administrative assistant to City Manager Shipley, Gail Fowler, received this request, made the redactions she felt were required by law, and distributed copies to the press. Also on January 10th, the Cookeville Police Department received an anonymous tip stating that the Animal Liberation Front was threatening to put a contract out on Hall's life. This threat was relayed to the Federal Bureau of Investigation, and the City of Cookeville arranged for Hall's family to be temporarily moved to Gatlinburg, Tennessee.

On January 16th, the City complied with a request from Geoffrey Davidian to obtain a copy of Hall's personnel file. Davidian operates the website "The Putnam Pit," with commentary on current events in Putnam County. After obtaining the redacted personnel file, Davidian posted portions of the personnel file on his web site. The file given to the media in both instances contained Hall's parents's names, his wife's name, his oldest child's name and date of birth, and Hall's driver's license, fingerprints, birth certificate, college transcript, and social security number (although it was not identified as such).

Without knowledge of the release of his personnel file, Hall agreed to an interview for a local radio station and agreed to be the subject of a segment on NBC's "Today Show." The segment was taped in Hall's attorney's office, a city park, and at Hall's home, a portion of which showed his children playing in the snow outside of the home. The segment was broadcast on January 21st. On or about January 27th, Hall learned that "The Putnam Pit" had received a copy of his redacted personnel file.

Hall filed this lawsuit on August 27th in the Middle District of Tennessee alleging that Shipley and Terry violated Hall's right to Due Process and right to privacy under the federal

Constitution, and his right to privacy under the Tennessee Constitution. Additionally, Hall alleged

that the Tennessee Open Records Act, T.C.A. § 10-7-503(c)(1) violates the federal Constitution as

well as the Tennessee state constitution. The State of Tennessee intervened as a defendant in order

to defend the statute.

On April 29, 2004, Shipley and Terry, in their individual capacities, moved for summary

judgment based on qualified immunity. On April 2, 2004, the State of Tennessee moved for partial

summary judgment as to the constitutionality of Tennessee's Open Records Act. The District Court

denied both motions and all three parties now appeal.

II.

This Court reviews a district court's denial of qualified immunity *de novo*. *Klein v. Long*,

275 F.3d 544, 550 (6th Cir. 2001). Under the doctrine of qualified immunity, "government officials

performing discretionary functions generally are shielded from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The

qualified immunity analysis generally entails three steps. First, the district court must consider

whether the facts, taken in the light most favorable to the party asserting the injury, show that the

city's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the facts

alleged are sufficient to establish a constitutional violation, then this Court must determine whether

the particular right allegedly violated was clearly established at the time the violation occurred. *Id*.

Third, this Court must determine whether the actions taken were "objectively unreasonable in light

of the clearly established constitutional rights." *Bennett v. City of Eastpointe*, 410 F.3d 810, 819 (6th Cir. 2005).

The right alleged by Hall in this case stems from this Court's holding in *Kallstrom v. City of Columbus*. 136 F.3d 1055 (6th Cir. 1998). In that case, the City of Columbus released the personnel and pre-employment files of three of the city's undercover police officers. *Id.* at 1059. The files included the officers's addresses and phone numbers, their immediate family's names, addresses, and phone numbers, their social security numbers, and copies of their driver's licenses. The city gave those files to the defense counsel in a trial at which the officers were to testify. *Id.* This Court held that the officers' right to privacy ensured a fundamental liberty interest in "preserving their lives and the lives of their family members, as well as preserving their personal security and bodily integrity." *Id.* at 1062. "[W]here the release of private information places an individual at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat, the 'magnitude of the liberty deprivation...strips the very essence of personhood.'" *Id.* at 1064 (quoting *Doe v. Claiborne County Bd. of Educ.*, 103 F.3d. 495, 506-07 (6th Cir. 1996)). Additionally, this Court held

> [t]he procedural component of the Fourteenth Amendment's Due Process Clause, however, at a minimum requires that the City notify the officers of a request for their addresses, phone numbers, and driver's licenses, and the names, addresses, and phone numbers of their family, prior to releasing this information so that they may have the opportunity to invoke their constitutionally protected rights to privacy and personal security.

*Kallstrom*, 136 F.3d at 1067.

Because the denial of qualified immunity came at the summary judgment phase, this Court must make all factual assumptions in favor of Hall, the non-moving party. Fed. R. Civ. P. 56(c).

Despite those assumptions, however, we conclude no *Kallstrom* constitutional violation occurred based on the particular facts in this case. Hall's penchant for media attention led to the voluntary release of his personal information into the public eye. Because he engaged the media, and in doing so released virtually all of the information released by the City through his personnel file, there was no increased risk to Hall or his family based solely on the release of his personnel file. Also, in order to hold a supervisor liable under section 1983, the supervisor must have condoned, encouraged, or knowingly acquiesced in the alleged misconduct. *Bennett*, 410 F.3d at 823 Hall has been unable to show any facts which demonstrate how Terry or Shipley condoned, encouraged, or knowingly acquiesced in the release of that information in Hall's personnel file not already released by Hall in his public appearances. At best, Shipley could be considered reckless in his role, but this does not rise to the necessary level of malfeasance for supervisor liability to attach. *See Nishiyama v. Dickson County*, 814 F.2d 277, 284-85 (6th Cir. 1987). For these reasons, no constitutional violation occurred and, therefore, analysis of steps two and three of the qualified immunity test is unnecessary.

### III.

The second appeal in this case is the State of Tennessee's claim that the district court erred in denying its motion for summary judgment regarding Hall's challenge of the constitutionality of Tenn. Code Ann. § 10-7-503(c)(1). Tennessee has stipulated that its appeal does not fall within this Court's original appellate jurisdiction and, therefore, relies on our pendent appellate jurisdiction. In order for pendent appellate jurisdiction to apply, the pendent case must be "inextricably intertwined" with the original appeal. *Swint v. Chambers County Commission*, 514 U.S. 35, 51

(1995); *Mattox v. City of Forest Park*, 183 F.3d 515, 523-24 (6th Cir. 1999). Nothing in Tennessee's brief or oral argument demonstrates how its appeal on the constitutionality of a statute is inextricably intertwined with Shipley's and Terry's appeal on the subject of qualified immunity. The inquiries of the two appeals are extremely different and they can not be considered coterminous because the outcome of one appeal has no bearing on the outcome of the other. *See Mattox*, 183 F.3d at 523-24. Therefore, we conclude that we do not have pendent appellate jurisdiction and dismiss the appeal.

IV.

For the reasons stated above, we REVERSE the judgment of the district court and hold that Shipley and Terry are entitled to qualified immunity. We DISMISS Tennessee's appeal for lack of jurisdiction.