*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0437p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DOROTHY BAILEY,

        *Plaintiff-Appellant,*

     *v.*

CITY OF PORT HURON; NEIL ROSSOW; and WILLIAM CORBETT,

        *Defendants-Appellees.*

No. 06-2375

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-71296—Denise Page Hood, District Judge.

Argued: October 23, 2007

Decided and Filed: November 1, 2007

Before: MARTIN, GIBBONS, and SUTTON, Circuit Judges.

---

## COUNSEL

**ARGUED:** Mark A. Porter, ALONZI, PORTER & ASSOCIATES, Pontiac, Michigan, for Appellant. William L. Fealko III, FLETCHER, FEALKO, SHOUDY & MOELLER, Port Huron, Michigan, for Appellees. **ON BRIEF:** Jamil Akhtar, AKHTAR, WEBB & EBEL, Troy, Michigan, for Appellant. William L. Fealko III, Gary A. Fletcher, FLETCHER, FEALKO, SHOUDY & MOELLER, Port Huron, Michigan, for Appellees.

---

## OPINION

---

     SUTTON, Circuit Judge. Dorothy Bailey claims that the Port Huron Police Department violated her constitutional right to privacy by disclosing her name, hometown, photograph, phone number and husband's occupation after prosecutors charged her in connection with a drunk-driving accident. Because a criminal suspect does not have a constitutional privacy right to the nondisclosure of this information, *compare Paul v. Davis*, 424 U.S. 693, 713–14 (1976), *with Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998), we affirm.

1

I.

Just past midnight on March 28, 2004, Dorothy Bailey and her husband—an undercover deputy sheriff in the drug task force unit of the St. Clair County Sheriff's Department—were involved in a one-car, alcohol-related, rollover accident in Port Huron, Michigan. Bailey told officers that she had been driving the car at the time of the accident, though further investigation revealed that her husband had been the driver.

On April 2, the Port Huron Police Department issued a press release saying that a "[s]heriff's deputy and his wife" were injured in an alcohol-related accident and that the deputy was driving. JA 102. At a meeting with police officials and a city attorney, the Baileys' attorney expressed concern about media coverage of the incident. The chief of police, William Corbett, said that he did not intend to contact the media further, leaving the Baileys' attorney with a "very strong feeling . . . that [they] had a consensus" that the media would not have any further involvement. JA 227.

Bailey was charged with resisting and obstructing an officer (because she had lied about who was driving the car), and her husband was charged with operating a motor vehicle while impaired. The couple pleaded no contest to the charges. On April 30, Corbett and Captain Neil Rossow approved a second press release announcing the charges, identifying Bailey and her husband by name and noting their hometown. Rossow faxed the press release to several media outlets. The police department also released information to a local newspaper and to a Detroit television station in response to requests under Michigan's Freedom of Information Act ("FOIA"). *See* Mich. Comp. Laws §§ 15.231–.246. The released information included Bailey's mug shot, a note that her husband was "in undercover assignment," JA 121–22, and a copy of the accident report, which listed the telephone number the Baileys apparently gave officers at the accident scene.

The negative publicity stemming from the police department's disclosures, Bailey claims, prompted a series of threatening incidents. When Bailey went to a Sam's Club with her husband and daughter at some point after the accident, she noticed two men following her and her daughter in the store. After she found her husband, he recognized the men as individuals whom he had investigated. Someone also "deliberately cut" the Baileys' cable connection, JA 147, and someone cracked their vehicle's windshield. Their neighbor noticed someone in the Baileys' backyard late at night, but the person disappeared before the neighbor could determine who it was.

Bailey filed a § 1983 claim alleging that the defendants violated her right to privacy under the Fourteenth Amendment when they released her photograph and other "personal information" to the public. JA 11. The district court granted the defendants' motion for summary judgment, holding that Bailey failed to show that the defendants violated her constitutional rights.

II.

To overcome a defendant's claim to qualified immunity, a plaintiff must establish (1) that the defendant violated a "constitutional right" and (2) that the right "was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We must decide the first question, the Supreme Court has instructed, before we reach the second one. *Id.* at 200.

The Fourteenth Amendment guarantees "due process of law" for any deprivation of "life, liberty, or property." U.S. Const. amend. XIV. The guarantee not only has the procedural component that these words suggest, but it also has been construed to have "a substantive component," *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846 (1992), that incorporates most of the guarantees of the Bill of Rights, *compare Barron v. Baltimore*, 32 U.S. 243, 247 (1833), and that protects other "fundamental rights and liberties" that are not expressly mentioned in the Bill of Rights but that are "objectively, deeply rooted in this Nation's history and tradition, and implicit

in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed," *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotation marks and citations omitted).

Substantive due process protects two types of privacy rights. It protects an individual's right to make "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Lawrence v. Texas*, 539 U.S. 558, 574 (2003). And it protects an individual's "interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *see also Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998); *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *J.P. v. DeSanti*, 653 F.2d 1080, 1088–91 (6th Cir. 1981).

Invoking the second line of cases, Bailey claims that an individual charged with a crime has a right to prevent the public from obtaining accessing to her mug shot, the information contained in the police report and the occupation of her spouse.

In *Paul v. Davis*, 424 U.S. 693 (1976), the plaintiff alleged that police officials, after arresting him for shoplifting, violated his constitutional rights when they included his name and mug shot in a flyer alerting local merchants to possible shoplifters. *Id.* at 694–96. The Court rejected his constitutional right-to-privacy claim as "far afield" from the Court's privacy decisions, explaining that it was "based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest." *Id.* at 713. "None of our substantive privacy decisions hold this or anything like this," the Court explained, "and we decline to enlarge them in this manner." *Id.*

In applying *Davis*, we have held that "there is no constitutional right to privacy in one's criminal record," *Cline*, 87 F.3d at 179, and that juveniles do not have a "constitutional right to nondisclosure of juvenile court records," *DeSanti*, 653 F.2d at 1088. "[T]he Constitution does not encompass a general right to nondisclosure of private information," we reasoned in *DeSanti*, *id.* at 1090, leaving most privacy-rights protection "to the states or the legislative process," *id.* at 1091.

Nor have we perceived any material tension between *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977), and *Whalen v. Roe*, 429 U.S. 589 (1977), on the one hand and *Davis* on the other. Although *Nixon* and *Whalen* acknowledge that there may be a right to nondisclosure of personal information in some settings, *see Nixon*, 433 U.S. at 457; *Whalen*, 429 U.S. at 599, both cases did not involve criminal records and both cases rejected the right-to-privacy claim, *see Nixon*, 433 U.S. at 465 (requiring President Nixon to disclose private materials); *Whalen*, 429 U.S. at 603–04 (upholding a state system that records personal information of patients who obtain prescription drugs). Neither have we read *Nixon* and *Whalen* to require us to balance the government "intrusion into privacy against the government's need for the disclosure" in every case, *DeSanti*, 653 F.2d at 1088, and we have explained that "not all . . . interests in nondisclosure of private information are of constitutional dimension, so as to require balancing government action against individual privacy," *id.* at 1091.

These precedents leave no room for Bailey's claim. As a matter of federal constitutional law, a criminal suspect does not have a right to keep her mug shot and the information contained in a police report outside of the public domain—and least of all from legitimate requests for the information from the press.

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), is not to the contrary. It held that undercover officers had a privacy interest of "constitutional dimension[]" against state disclosure of their personnel files to defense counsel for a violent gang. *Id.* at 1063. The case offers

a poor analogy to this one: (1) There, the plaintiffs were not criminal suspects, *see id.* at 1059; here, the plaintiff was a criminal suspect; (2) there, the personal information was given to the lawyers for the criminal defendants; here, the information was given to the press in response to a freedom of information request; (3) there, the disclosure included the personal information of the officers, their immediate family members and their personal references, their bank account information and account balances, their social security numbers, their answers to personal questions asked during polygraph examinations and copies of their drivers' licenses, *id.* at 1059; here, all of the information, save for the telephone number, was publicly available, *see* JA 56, JA 63–64; and (4) there, the personal information was located in an employee personnel file, *Kallstrom*, 136 F.3d at 1059; here, the information was part of a police report.

The same is true of *Deja Vu of Nashville, Inc. v. Nashville*, 274 F.3d 377 (6th Cir. 2001). In that case, an ordinance required adult entertainers to provide personal information—including "full name, height, weight, hair color, eye color, date of birth, current residential address, and all residential addresses for the prior three years"—to obtain a work permit for an adult establishment. *Id.* at 385, 393. Applying *Kallstrom*, the court held that the entertainers' "names and current and past residential addresses constitute protected private information and are therefore exempted from Tennessee's Open Records Act." *Id.* at 395. The entertainers in *Deja Vu* were not criminal suspects, and the information at issue was part of a routine work permit application, not a criminal investigation. Had police charged those same entertainers with drunk driving on their way home from work, *Davis*, not *Kallstrom*, would apply to the release of their names and addresses.

Any lingering suspense about the proper resolution of this case can be brought to an end by *Barber v. Overton*, 496 F.3d 449 (6th Cir. 2007). There, we declined to establish a privacy right in personal information collected during an internal investigation of corrections officers accused of sexually assaulting prisoners. *Id.* at 451, 456–57. We held that state officials did not violate the officers' rights by including their names, birth dates and social security numbers in an investigation report and disclosing the information to prisoners. *Id.*

Under these circumstances, *Davis*, not *Kallstrom* or *Deja Vu*, governs this case, and under *Davis* there is no constitutional right to privacy for a criminal suspect who claims that "the State may not publicize a record of an official act." *Davis*, 424 U.S. at 713.

III.

For these reasons, we affirm.