NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0195n.06

No. 23-1448

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 02, 2024
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| CLIFTON SMITH, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF MICHIGAN |
| CITY OF DETROIT, MICHIGAN, et al., | ) |
| | ) |
| Defendants-Appellees. | ) OPINION |
| | ) |

Before: SILER, CLAY, and GRIFFIN, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Clifton Smith appeals the district court's dismissal of his complaint filed against the City of Detroit and two unnamed Detroit police officers. Smith brought a claim under 42 U.S.C. § 1983, alleging that Defendants violated his substantive due process rights when Detroit police officers facilitated the release of a felon from custody or court supervision who went on to shoot Smith 23 times. Because the district court correctly found that Smith's complaint failed to state a constitutional violation, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from Smith's complaint. On October 29, 2019, two unnamed Detroit police officers—listed in the complaint as "John Doe 1" and "John Doe 2" ("John Does")—engaged convicted felon Kenyel Brown as a confidential informant. Compl., R. 1, Page ID #2–3, 5. The complaint alleges that, at this time, Brown was either incarcerated or under court

- 1 -

supervision overseen by the United States District Court for the Eastern District of Michigan. Despite knowing or having reason to know of Brown's extensive criminal history, history of noncompliance with court orders, propensity for violence, and psychological instability, the John Does facilitated his release from either custody or supervision in October 2019 so that Brown could serve as a confidential informant.

After Brown was released, he committed multiple murders. On December 7, 2019, he murdered Laura Hattington in River Rouge, Michigan. Later, on January 29, 2020, Brown murdered two people while at a home in River Rouge with Smith, Smith's girlfriend, and another individual. Brown twice asked to borrow money from Smith, but Smith declined each time. After the second time Smith declined to lend Brown money, Brown pulled out a gun and shot Smith's girlfriend twice. He then shot Smith 23 times, before turning the gun on Smith's girlfriend again and shooting her in the head. Brown then murdered another person in the house and left. Although Smith survived the shooting, it required him to undergo surgery and left him with permanent injuries.

## B. Procedural History

On January 28, 2023, Smith filed a complaint against the City of Detroit and the John Does. He brought a claim under 42 U.S.C. § 1983, alleging that the John Does violated his substantive due process rights under the Fourteenth Amendment when they created a danger to Smith by releasing Brown from custody or supervision. He also brought a municipal liability claim against the City of Detroit under § 1983, arguing that the City had a policy or custom of "using confidential informants improperly and/or without regard to the safety of its community." Compl., R. 1, Page ID #9. Finally, he brought a state law claim against the John Does, alleging that they were grossly

negligent in facilitating Brown's release from custody or supervision and failing to properly supervise Brown upon his release.

Smith served only the City of Detroit in the district court. The City filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that, because Smith had failed to state an underlying substantive due process violation, the City could not be held liable under a municipal liability theory. Specifically, the City argued that Smith failed to allege facts sufficient to meet the state-created danger exception to the general principle that acts by private individuals, such as Brown, do not violate the Due Process Clause.

The district court agreed with the City and found that Smith had not stated a substantive due process violation under the state-created danger theory. It acknowledged that this Court's precedent requires a plaintiff to show "a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large" in order to succeed on a state-created danger theory of substantive due process. *Lipman v. Budish*, 974 F.3d 726, 744 (6th Cir. 2020) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)). Finding that the complaint alleged that Brown posed a "particular" danger to Smith in only a conclusory manner, the district court concluded that the complaint did not plausibly state that the John Does' actions placed Smith specifically at risk of harm from Brown. Compl., R. 1, Page ID #3. The district court thus dismissed Smith's § 1983 claims against the John Does and, because no underlying constitutional violation had been sufficiently pleaded, dismissed the municipal liability claim against the City as well. Relying on its discretionary authority to dismiss supplemental state law claims after dismissing all federal law claims, the district court dismissed Smith's state law gross negligence claim without prejudice. *See* 28 U.S.C. § 1367(c)(3); *see also Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir.

1996). Smith timely appealed the dismissal of his complaint. On appeal, he challenges only the dismissal of his federal law claims.

## II. DISCUSSION

This Court reviews a district court's denial of a motion to dismiss de novo. *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). "In reviewing the motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Conclusory allegations—those that "amount to nothing more than a 'formulaic recitation of the elements' of a . . . claim"—are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### A. Constitutional Violation

The Due Process Clause of the Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Substantive due process, as opposed to procedural due process, "is the doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (cleaned up). It protects those interests enumerated in the Constitution, certain interests "so rooted in the traditions and conscience of our people as to be fundamental," and "freedom from government actions that 'shock the conscience.'" *Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir. 2003) (citation omitted).

Smith's complaint alleges that the John Does deprived him of a protected interest when they facilitated Brown's release from custody or supervision and failed to properly supervise him

upon release, leading to Brown shooting Smith. Generally, the Due Process Clause does not render a state liable for the actions of private individuals. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."). However, based on the Supreme Court's decision in *DeShaney*, this Court has recognized two situations in which a state may be held liable under the Due Process Clause for acts taken by private individuals, one of which is relevant to this case. *Lipman*, 974 F.3d at 741–42. Specifically, the "state-created danger doctrine" holds state actors liable for harm caused by private individuals if the state actors "create or increase the danger of private harm." *Id.* Smith brings his due process challenge under this theory of liability.

At the motion to dismiss stage, a plaintiff must allege the following three elements to show a violation of substantive due process under the state-created danger theory: (1) "an affirmative act that creates or increases the risk," (2) "a special danger to the victim as distinguished from the public at large," and (3) "the requisite degree of state culpability."[1] *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 464 (6th Cir. 2006). On appeal, the City argues that Smith has failed to meet the first two prongs of this test. First, the City briefly argues that the complaint fails to allege that any affirmative acts taken by the John Does led to Brown shooting Smith. Smith contends that he

---

[1] The third prong has been described by some of this Court's cases as the requirement that "[t]he state must have known or clearly should have known that its actions specifically endangered an individual." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 469 (6th Cir. 2006) (alteration in original) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). But we have since clarified that this knowledge requirement is synonymous with the level of culpability required to establish a substantive due process violation. *See id.*; *see also Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 932 (6th Cir. 2020). Thus, plaintiffs who attempt to state a violation of substantive due process under the state-created danger theory must show that the state actors' conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

has alleged an affirmative act by stating that the John Does facilitated Brown's release from custody or supervision. We need not resolve this dispute. Even assuming that Smith adequately pleaded affirmative acts taken by the John Does, he has failed to meet the second prong of the state-created danger theory. That is, he has failed to allege that Brown posed any special danger to Smith as opposed to the public at large. Smith's failure to meet the second prong of the test is dispositive in this case.

To sufficiently allege a substantive due process violation under a state-created danger theory, plaintiffs must allege that "the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). A plaintiff may also allege that he was a member of a "small class" of individuals placed at risk. *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). Defendants correctly argue that Smith has alleged that Brown's release posed a risk to only the general public, as opposed to Smith specifically.

In an analogous case, the Supreme Court held that a parole board's release of an individual who committed murder while on parole did not violate the Due Process Clause because "the parole board was not aware that [the] decedent, as distinguished from the public at large, faced any special danger." *Martinez v. California*, 444 U.S. 277, 285 (1980). This Court similarly found no substantive due process violation by state parole board members when a parolee killed someone because the decedent was "simply a member of the public at large." *Janan v. Trammell*, 785 F.2d 557, 560 (6th Cir. 1986). Both *Martinez* and *Janan* were decided without reference to what this Court now labels the state-created danger doctrine. Nevertheless, they both stand for the

proposition that plaintiffs must allege that the release of an individual from custody posed a risk of harm to a specific individual in order to state a substantive due process claim.[2]

Moreover, in the context of the three-part test developed for the state-created danger theory in this Circuit, we have repeatedly found no due process violation when plaintiffs identify a risk to only the general public by a given state action. For example, officers who failed to stop a drag race on a city street that resulted in the death of a spectator did not create a special danger to the spectator because "the crowd contained at least 150 people at the time of the race." *See Jones v. Reynolds*, 438 F.3d 685, 697 (6th Cir. 2006). Similarly, a city's decision to create a 25 mile-per-hour speed limit on a street and the city's failure to enforce this speed limit did not create a special danger to a young boy who was killed by a driver traveling at 40 miles-per-hour down the road. *Schroder v. City of Fort Thomas*, 412 F.3d 724, 726, 729 (6th Cir. 2005). We held that the speed limit law did not create a special danger to the young boy that could be distinguished from the "general traffic risk to pedestrians and other automobiles." *Id.* at 729. Further, officers who spoke with an intoxicated woman and encouraged her to go home in her car did not create a special danger to the motorist she later killed because the drunk driver posed no more risk of harm to the motorist than to the general public. *Koulta v. Merciez*, 477 F.3d 442, 444, 447 (6th Cir. 2007). We also declined to recognize individuals driving in the area at the time of the crash as a sufficiently discrete class of individuals put at risk. *Id.*; *see also Jones v. City of Carlisle*, 3 F.3d

---

[2] Smith attempts to distinguish *Martinez* from the instant case by claiming that Brown acted as an agent of the state when he shot Smith because he was a confidential informant. He highlights that the Supreme Court in *Martinez* noted that the parolee who committed murder "was in no sense an agent of the parole board," and declined to impose liability on the parole board partly for this reason. 444 U.S. at 285. But Smith cites no authority for the proposition that a confidential informant acts as an agent of the state at all times. It particularly strains belief that Brown would have been acting as an agent of the state when he committed multiple murders and shot Smith 23 times.

945, 947–50 (6th Cir. 1993) (finding no special danger to driver injured by another driver having an epileptic seizure because the city's decision to permit the epileptic driver to maintain a driver's license did not pose a special risk to the injured driver as compared to the public).

Smith argues that he has sufficiently alleged that the John Does' actions placed him specifically at risk by pointing to one line in his complaint which reads: "At all times relevant to this lawsuit, John Doe 1, John Doe 2, and/or the City knew or had reason to know that Brown represented a danger to the public, *as well as to Plaintiff in particular.*" Compl., R. 1, Page ID #3 (emphasis added). As the district court correctly found, this statement is too conclusory to sufficiently allege that releasing Brown put Smith particularly at risk. Rather than pleading any specific facts that would have put Smith, as opposed to the general public, at risk of harm from Brown, the complaint instead formulaically recites the second prong of the state-created danger theory. *See Iqbal*, 556 U.S. at 681. Moreover, the remainder of Smith's complaint does not contain any more specific allegations of the risk of harm to Smith in particular, as distinguished from the general public.

Smith further argues that Brown posed a danger to a small class of individuals of which Smith was a member, namely individuals living in Detroit and the downriver communities, and particularly those individuals known by Brown before his release. But the entire metropolitan area of the city of Detroit, even if narrowed to just the downriver communities, is not a "small class" of people, *Hunt*, 542 F.3d at 534; it is the general public. *Cf. Jones*, 438 F.3d at 697 (finding a crowd of 150 spectators more similar to the general public). Even narrowing this group to the individuals in these communities known by Brown before his release does not create a sufficiently small class of identifiable people because Smith provides no context for how large or small this group may be. *See Koulta*, 477 F.3d at 447 (declining to recognize a group of individuals driving

on discrete roads in a narrow time period as a small class of people because the Court had "no idea how many people would be in that group").

More importantly, Smith's complaint does not allege that Brown posed a specific risk to these allegedly small classes of people. Instead, Smith raised this argument only in his opposition to the City's motion to dismiss. Thus, even if specific pockets of Detroit or individuals known by Brown before his release could legally constitute small classes of individuals at risk of violence from Brown, Smith's failure to allege this risk in his complaint means that he may not rely on this theory. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (acknowledging that plaintiffs may not amend their complaints through briefing).

Finally, Smith's complaint also fails to state a substantive due process violation because he has failed to sufficiently allege that the John Does were aware of a specific risk to Smith or a class of people to which Smith belonged. *See Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 933–35 (6th Cir. 2020) (finding no substantive due process violation in part because state actors were not "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" (citation omitted)); *Jones*, 438 F.3d at 697 (finding no substantive due process violation in part because officers had no "reason to know" that any actions they took put the plaintiff at risk).[3] Other than his conclusory statement that the John Does knew that Brown posed a risk to Smith "in particular," Smith does not allege any other facts that would put the John Does on notice that Brown posed a risk to Smith. Compl., R. 1, Page ID #3. Because Smith failed

---

[3] We have occasionally referenced this knowledge requirement in the context of the second prong of the state-created danger test. *See, e.g.*, *Jones*, 438 F.3d at 697; *Culp v. Rutledge*, 343 F. App'x 128, 136 (6th Cir. 2009). More commonly, we have discussed the knowledge of the state actors as a part of the culpability analysis of the third prong of the test. *See, e.g.*, *Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d at 933–35; *Lipman*, 974 F.3d at 744 & n.7; *McQueen*, 433 F.3d at 469.

to allege that Brown posed a specific risk of harm to Smith, as opposed to the general public, and because he failed to allege that the John Does knew of any risk to Smith if the risk did exist, he has failed to state a due process violation.

## B. Municipal Liability

Smith also sued the City for its allegedly faulty policies and practices relating to confidential informants, seeking to hold the City liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). However, to hold a municipality liable under *Monell*, the plaintiff must sufficiently plead an underlying constitutional violation. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers."). Because Smith has not plausibly stated an underlying constitutional violation, the claim against the City must be dismissed as well.

## III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's dismissal of Smith's complaint.